# Carlisle Corporation Retirement Plan for Hourly Paid Employees

(As Amended and Restated Effective as of January 1, 1997)

Appendix Exhibit A

EXHIBIT

A

tabbies®

# Contents

### Article 1. Establishment of the Plan                                    1
1.1  Establishment of the Plan                                              1
1.2  History of Plans                                                       1
1.3  Integration Under Master Plan Format                                   1
1.4  Restatement of Master Plan                                             2
1.5  Applicability of the Plans                                             2

### Article 2. Definitions                                                  3
2.1  Definitions                                                            3
2.2  Additional Definitions                                                 9
2.3  Gender and Number                                                      9

### Article 3. Participating and Crediting of Service                      10
3.1  Date of Participation                                                 10
3.2  Duration of Participation                                             10
3.3  Transferred Employees                                                 10
3.4  Hours of Service                                                      11
3.5  Vesting Service                                                       12
3.6  Credited Service                                                      13
3.7  Break in Service                                                      14
3.8  Parental, Family, or Medical Leave                                    14
3.9  Leased Employees                                                      15
3.10 Military Leave                                                        15

### Article 4. Benefits                                                     16
4.1  Normal Retirement Benefits                                            16
4.2  Early Retirement Benefits                                             16
4.3  Disability Retirement Benefits                                        17
4.4  Deferred Vested Retirement Benefits                                   18
4.5  Maximum Annual Benefits                                               18
4.6  Automatic Preretirement Survivor Annuity for Active and Terminated Married
     Vested Members                                                        19
4.7  Automatic Post-Retirement (Joint and Survivor) Surviving Spouse Benefits  20
4.8  Post-Retirement Optional Retirement Benefits                          22
4.9  Payment of Small Amounts                                              24

4.10    Reemployment                                                                      25
4.11    Special Employment/Reemployment Provisions                                          25
4.12    Application for Benefits and Data                                                   26
4.13    Direct Rollovers of Eligible Rollover Distributions                                 26

### Article 5. Special Retirement and Death Benefits for Certain Members    28
5.1     Special Retirement and Death Benefits                                               28

### Article 6. Financing                                                                    29
6.1     Financing                                                                           29
6.2     Employer Contributions                                                              29
6.3     Participant Contributions                                                           29
6.4     Exclusive Benefit of Members                                                        29
6.5     Nonreversion                                                                        29
6.6     Separate Accounting of Assets Constituting a Separate Plan for Each Participating
        Group                                                                               30
6.7     Payment of Expenses                                                                 31
6.8     Investment in Annuity Contracts                                                     31

### Article 7. Administration                                                               32
7.1     Appointment of Committee                                                            32
7.2     Organization and Operation of Committee                                             32
7.3     Powers and Duties of Committee                                                      32
7.4     Funding Policy                                                                      34
7.5     Accounts and Reports                                                                34
7.6     Compensation and Expense of Committee Members                                       34
7.7     Discretionary Powers                                                                35
7.8     Bond                                                                                35
7.9     Appeals from Denial of Claims                                                       35
7.10    Indemnification                                                                     39

### Article 8. Miscellaneous Provisions                                                     40
8.1     Incompetence                                                                        40
8.2     Nonalienation                                                                       40
8.3     Right to Terminate Employment                                                       41
8.4     Notice of Address                                                                   41
8.5     Unclaimed Payments                                                                  41
8.6     Notices                                                                             41
8.7     Action by Company                                                                   41
8.8     Effect of Mistake                                                                   42
8.9     Severability                                                                        42
8.10    Counterparts                                                                        42
8.11    Plan Binding on Successors                                                          42

8.12   Applicable Law                                                    42

## Article 9. Amendment and Termination                                  43
                                                                         43
9.1    Amendments                                                        43
9.2    Provision Against Diversion                                       43
9.3    Distribution on Termination or Partial Termination                44
9.4    Successor Employer                                                44
9.5    Transfers, Mergers, and Consolidations

## Article 10. Participation by Affiliates                               45
                                                                         45
10.1   Participation in the Plan

# Article 1. Establishment of the Plan

## 1.1 Establishment of the Plan

Carlisle Corporation and its affiliate, Continental Carlisle Incorporated, have established and now maintain a number of separate qualified defined benefit pension plans for the benefit of various groups of their bargaining and nonbargaining hourly employees.

Such Plans are:

(a)     Retirement Plan for Hourly-Paid Employees of Carlisle Tire & Wheel Company Division of Carlisle Corporation;

(b)     Retirement Plan for Bargaining Unit Employees of Motion Control Industries Division of Carlisle Corporation;

(c)     Pension Plan for Bargaining Unit Employees of Carlisle Engineered Products— Crestline;

(d)     Pension Plan for Bargaining Unit Employees of the Canton, Ohio Plant of Geauga Company Division of Carlisle Corporation;

(e)     Retirement Plan for Hourly-Paid Employees of Continental Carlisle Incorporated Subsidiary of Carlisle Corporation;

(f)      Retirement Plan for Hourly-Paid Employees of the Fredericksburg, Virginia and Lancaster, Pennsylvania Plants of Motion Control Industries Division of Carlisle Corporation;

(g)     Retirement Plan for Hourly-Paid Employees of Carlisle Braking Systems Division of Motion Control Industries Subsidiary of Carlisle Corporation;

(h)     National Friction Products Division of Motion Control Industries Hourly Employees' Retirement Income Plan; and

(i)      Retirement Plan for Bundy Park Bargaining Unit Employees of Carlisle Engineered Products, Inc.

## 1.2 History of Plans

The history applicable to each of the foregoing separate plans, or any other separate plan hereunder, from their respective effective dates through the dates such plans are integrated under this master retirement plan, summarized in the Supplement applicable to each Participating Group.

## 1.3 Integration Under Master Plan Format

Each of the separate plans set out in section 1.1 is amended and restated so that on and after January 1, 1997 each separate plan shall be contained in—

(a)    this master plan document containing provisions common to all Plans; and

(b)    a Supplement containing special provisions applicable only to Hourly Employees covered by the particular separate plan.

In addition, the Company may establish other qualified plans for additional Participating Groups of its Hourly Employees, or may integrate other existing hourly pension plans under this master plan format, by adopting a Supplement with respect to such Participating Groups.

## 1.4 Restatement of Master Plan

The master plan contained in this document is hereby amended and restated effective as of January 1, 1997 to conform the Plan to the General Agreement on Tariffs and Trade as approved by the Uruguay Round Agreements Act, the Uniformed Service Employment and Reemployment Rights Act of 1994, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, and related regulations and rulings, to make technical and conforming changes, and to revise the master plan in other particulars.

## 1.5 Applicability of the Plans

Except as otherwise provided in a Supplement, each Plan shall be applicable only with respect to Hourly Employees who are in the active employment of the Employer on or after January 1, 1997.

# Article 2. Definitions

## 2.1 Definitions

Whenever used in the Plan, the words and phrases defined in this Article 2 shall have the following meaning unless a different meaning is clearly required by the context of the Plan. When the defined meaning is intended the term is capitalized.

(a)    "Act" means the Employee Retirement Income Security Act of 1974, as now in effect or hereafter amended.

(b)    "Actuarial Equivalent" means equality in the value of aggregate amounts expected to be received under different forms of payment, other than a lump sum amount, or at times other than the Normal Retirement Age based on the following assumptions except as otherwise provided in the Plan:

    (1)    Mortality. The projections to 1975, by Projection Scale D, of the Male 1971 Group Annuity Mortality Table (six years set back for all Members and no set back for contingent annuitants); and

    (2)    Interest. 5.5 percent.

(c)    "Actuary" means the actuary for the Plan who is appointed or selected by the Committee.

(d)    "Affiliate" means—

    (1)    the Company and any corporation, i.e., either a subsidiary corporation or an affiliated or associated corporation of the Company, which together with the Company is a member of a "controlled group" of corporations (as defined in Code section 414(b));

    (2)    any organization (whether or not incorporated) which together with the Company is under "common control" (as defined in Code section 414(c));

    (3)    any organization (whether or not incorporated) which together with the Company is an "affiliated service group" (as defined in Code section 414(m)); or

    (4)    any other entity required to be aggregated with the Company pursuant to regulations under Code section 414(o).

(e)  "**Beneficiary**" means the person or persons designated by the Member in writing on a form filed with the Committee to receive any benefits (other than a continuing monthly retirement benefit under a Contingent Annuitant Option) upon the death of the Member. Except as otherwise provided in sections 4.6 and 4.7 hereof, the Member may designate primary and contingent beneficiaries and may change such designation at any time and from time to time during his lifetime without the consent of the beneficiary or beneficiaries so designated, and no such beneficiary or beneficiaries shall have any vested rights prior to the death of the Member. If no beneficiary is designated at the death of the Member, or if no such beneficiary survives the Member, the Beneficiary shall be—

(1)  the Member's spouse, if living;

(2)  the Member's descendants, if any, in equal shares;

(3)  the Member's parents, if living, in equal shares;

(4)  the Member's heirs at law in the proportion determined by the laws of intestate succession for the Member's state of residence at the time of the Member's death; or

(5)  otherwise, to the estate of the Member.

(f)  "**Benefit Commencement Date**" means the date as of which the first payment of a Member's normal, early, disability (if any), or deferred vested retirement benefit is due under the Plan.

(g)  "**Board of Directors**" or "**Board**" means the Board of Directors of Carlisle Corporation.

(h)  "**Code**" means the Internal Revenue Code of 1986, as amended, or as it may be amended from time to time, or the corresponding provisions of any subsequent law.

(i)  "**Committee**" means the Carlisle Corporation Pension and Insurance Committee, as described in Article 7.

(j)  "**Company**" means Carlisle Corporation and its corporate successors.

(k)  "**Contingent Annuitant**" means the person entitled to receive a monthly retirement benefit upon the death of a Member who has elected a Contingent Annuitant option.

(l)  "**Coverage Date**" means the date or dates as of which each separate plan shall be effective, as set forth in the Supplement hereto.

(m)  **"Disability"** means total and permanent disability, which is a medically determinable physical or mental impairment of a Participant resulting from a bodily injury, disease, or mental disorder which renders him incapable of engaging in any substantial gainful activity and which can be expected to result in death or to last at least 12 months; provided, however, that the Participant must be eligible for and actually receiving disability benefits under the Social Security Act for the period of time from his date of disability, after the waiting period required under the Social Security Act, until his Normal Retirement Age.

The total and permanent disability of any Participant shall be determined by the Committee, upon the advice of a qualified physician, in accordance with uniform principles consistently applied to all Participants in similar circumstances. At reasonable times prior to the Participant's Normal Retirement Age, the Committee may require the Participant to furnish evidence satisfactory to the Committee of the continuance of such Disability. Should any such Participant refuse or fail to submit such evidence, he shall lose all rights to any disability retirement benefits until he shall actually submit such evidence, and should he fail for one year to submit such evidence, all his rights to any disability retirement benefits shall permanently cease. If it appears from such evidence that the Disability of a Participant who has not reached his Normal Retirement Age has ceased, all his rights to any disability retirement benefits shall cease.

Or, **"Disability"** shall have such other or further meaning as specified in a Supplement applicable to a Participating Group.

(n)  **"Employee"** means any person employed by the Company or an Affiliate, but shall not include any person who is a "leased employee" as described in Code section 414(n)(2).

(o)  **"Employer"** means the Company and any Affiliate which elects to become a party to the Plan with the approval of the Company by adopting the Plan for the benefit of its eligible Hourly Employees in one or more Participating Groups in the manner prescribed in Article 10, or any one or more or all of such adopting Affiliates, as the context indicates. The Company may act as agent for an Affiliate that becomes an Employer hereunder for all purposes of the Plan. As of January 1, 1997, the Employers under the Plan are Carlisle Corporation (E.I.N. 23-0457510), Continental Carlisle Incorporated (E.I.N. 31-1075965), and Motion Control Industries, Inc. (E.I.N. 25-1539808).

(p)  **"Hourly Employee"** means any hourly paid person in the employ of the Company in its plant or other facility at the location or locations specified in the Supplement, except that it shall not include—

(1) an Employee who is included in a unit of Employees covered by a collective bargaining agreement on or after January 1, 1993 unless such agreement specifically provides for his coverage under the Plan; or

(2) any person employed by and on the payroll of any separate division, unit, or operation of the Employer which is established after January 1, 1993, incident to the creation or acquisition (including, but not limited to, acquisition by purchase of assets or by liquidation, merger, or reorganization) of a separate business enterprise by the Employer, except as may otherwise specifically be provided in any resolution of the Board of Directors adopted at the time of, or any time after, such acquisition and affecting in a nondiscriminatory manner, such person and all other persons similarly situated.

(q)   "**Inactive Participant**" means an Employee who was a Participant but who is not currently eligible to participate in the Plan for any reason, including, without limitation, transfer to employment either—

(1) as an Employee of an Employer where he does not meet the requirements to be a Participant (i.e., transfer to salaried employment or other employment outside the Participating Group); or

(2) as an Employee of a nonparticipating Affiliate.

(r)   "**Insurance Company**" means the insurance company or companies with whom the Company has agreed to fund any of the benefits provided by this Plan or a separate plan hereunder.

(s)   "**Member**" means—

(1) any Hourly Employee who is qualified under and who has become a Participant in the Plan.

(2) any Inactive Participant or former Participant who still has an accrued benefit under the Plan.

(3) any spouse or other Beneficiary who has an accrued benefit in the Plan, and

(4) an alternate payee under a qualified domestic relations order for whom a segregated accrued benefit is maintained under the Plan.

If upon termination of a Member's Vesting Service the present value of his accrued deferred vested retirement benefit is zero, he shall be deemed to have received an immediate zero lump sum payment under section 4.9 and thereupon shall cease to be a Member for purposes of section 4006 of the Act.

(t)   "**Participant**" means any Hourly Employee who, on the Coverage Date applicable to the Participating Group, or thereafter, is a member of such Participating Group

and who has met any additional eligibility requirements of the Plan applicable to the Participating Group, as set forth in Article 3 and in the applicable Supplement hereto.

(u)  "**Participating Group**" means the separate group of Employees which is classified by the Company by specific reference to location or otherwise as constituting a participating group covered by the Plan, as set forth in the applicable Supplement hereto; and there shall be an accounting of assets for each Participating Group separate and apart from the assets of any other Participating Group and any other retirement or pension plan maintained by the Company and Affiliates.

(v)  "**Plan**" means, as the context indicates—

   (1)  the provisions contained in this master retirement plan document, the "Carlisle Corporation Retirement Plan for Hourly Paid Employees" (Part I) or

   (2)  the separate defined benefit pension plan embodied collectively in this Part I and in the Part II Supplement applicable to a Participating Group.

(w)  "**Plan Year**" means the calendar year, or such other fiscal year of the Plan as may be specified in the Supplement.

(x)  "**Restatement Date**" means the date as of which the Plan has last been amended and completely restated as to Employees in the Participating Group, as specified in the Supplement.

(y)  "**Retirement Age**" means a Member's Normal Retirement Age, Early Retirement Age, Disability Retirement Age, or Vested Retirement Age, whichever is applicable, and which are defined as follows:

   (1)  "**Normal Retirement Age**" means the time when a Member has both attained the age and has completed the years of Plan participation or Credited Service, if any, specified in the Supplement applicable to his Participating Group. A Member's right to his entire accrued retirement benefit shall be nonforfeitable when he attains his Normal Retirement Age.

   (2)  "**Early Retirement Age**" means a Member's age, prior to his Normal Retirement Age, when he has both attained the age and has completed the years of Vesting Service specified in the Supplement applicable to his Participating Group.

   (3)  "**Disability Retirement Age**" means a Member's age when he has completed the number of years of Vesting Service and met such other requirements as specified in the Supplement applicable to his Participating Group.

(4)  "Vested Retirement Age" means, on and after January 1, 1989, a Member's age, prior to his Early Retirement Age, when he has completed at least five years of Vesting Service.

(z)  "Retirement Date" means a Member's Normal Retirement Date, Early Retirement Date, Disability Retirement Date, or Vested Retirement Date, whichever is applicable, and which are defined as follows:

(1)  "Normal Retirement Date" means the first day of the calendar month coincident with or next following the date a Member's Vesting Service terminates because of normal retirement on or after he attains his Normal Retirement Age.

(2)  "Early Retirement Date" means the first day of the calendar month coincident with or next following the date a Member's Vesting Service terminates because of early retirement on or after he attains his Early Retirement Age but not his Normal Retirement Age.

(3)  "Disability Retirement Date" means the later of—

(A)  the first day of the calendar month coincident with or next following the date a Participant's Vesting Service terminates due to his Disability or

(B)  the date the Participant's disability benefits, if any, begin under the Social Security Act.

(4)  "Vested Retirement Date" means, for a Member whose Vesting Service terminates after he attains his Vested Retirement Age for reasons other than normal or early retirement or death, the first day of any calendar month coincident with or next following—

(A)  his fifty-fifth birthday or

(B)  such other earliest commencement date as may be specified in a Supplement.

(aa)  "Retirement Fund" means any Trust Fund or insurance fund established and maintained under any Trust or group annuity or other insurance contract designated as a part of the Plan to finance the benefits under the Plan.

(bb)  "Service" means the "Hours of Service", "Vesting Service", "Credited Service", and "Break in Service" that are applicable to an Employee, as provided in Article 3.

(cc)  "Supplement" means the separate Part II supplement to this Plan containing the necessary provisions pertaining to the Participating Group which is to be covered by the Plan in accordance with said Supplement and said group's Hourly Employees'

participation in the Plan. Any such Participating Group shall become covered by the Plan as of the Coverage Date set forth in said Supplement which shall incorporate this Plan by reference thereto.

(dd)    "**Trust**" as herein used means the legal entity resulting from the agreement between the Company and the Trustee by which contributions made under the Plan shall be received, held, invested, and applied to provide benefits to Members.

(ee)    "**Trust Agreement**" means any agreement in the nature of a trust established to form a part of the Plan to receive, hold, invest and dispose of the Trust Fund.

(ff)    "**Trustee**" means the corporate trustee acting under the Trust Agreement and its corporate successors.

(gg)    "**Trust Fund**" means all funds received by the Trustee and held under the Plan, together with all income, profits, or increments thereon.

## 2.2 Additional Definitions

A Supplement may set out additional definitions to implement the benefit provisions applicable to a particular Participating Group.

## 2.3 Gender and Number

Except when otherwise indicated by the context, any masculine terminology herein shall also include the feminine and neuter, and the definition of any term herein in the singular may also include the plural.

# Article 3. Participating and Crediting of Service

## 3.1 Date of Participation

Each person who is or becomes an Hourly Employee shall become a Participant in the Plan on the date specified in the Supplement.

## 3.2 Duration of Participation

An Hourly Employee who becomes a Participant shall continue to be a Participant or Inactive Participant until he has a Break in Service and also shall continue to be a Member thereafter for as long as he is entitled to receive any benefits hereunder. After receiving all benefits to which he is entitled hereunder, he shall cease to be a Member. If a Member incurs a Break in Service and thereafter returns to employment as an Hourly Employee such that his Vesting Service is restored under section 3.5(e), he shall immediately again be eligible to become a Participant in the Plan in accordance with the provisions of section 3.1 and 3.5(e). Otherwise, he shall be treated as a new Employee.

## 3.3 Transferred Employees

(a)    Transfers In. An Employee who shall be transferred into employment that renders him eligible to become a Participant hereunder shall be credited with Vesting Service for all his employment with the Employer and Affiliates, before and after such transfer, and shall accrue Credited Service under the Plan starting with his date of transfer, subject to section 3.6.

(b)    Transfers Out. Any Participant who is transferred to employment where he becomes an Inactive Participant shall continue to be credited with Vesting Service, but not Credited Service, for the period during which he is an Inactive Participant. If such person has transferred to salaried employment status with the Employer, when he subsequently retires or when his Vesting Service terminates, he shall, if he otherwise meets the eligibility requirements of section 4.1, 4.2, 4.3, or 4.4, be eligible to receive a monthly retirement benefit under the Plan based on Credited Service accumulated hereunder while a Participant and based on the benefit rate in effect as of the date his Vesting Service terminates. If such a transferred Employee again becomes an Hourly Employee, he shall continue to accrue Vesting Service and shall begin to again accrue Credited Service while an Hourly Employee, subject to section 3.6.

## 3.4 Hours of Service

The term "Hours of Service" means the hours of employment by the Employer and Affiliates for which an Employee receives credit for purposes of eligibility to participate in the Plan and determining his Vesting and Credited Service under the Plan and which shall be subject to any modifications or exceptions specified in the Supplement applicable to his Participating Group, as follows:

(a)    **Hours Worked.** One hour for each hour for which the Employee is directly or indirectly paid or entitled to payment for the performance of duties during the applicable computation period for which his Hours of Service are being determined under the Plan. (These hours shall be credited to the Employee for the computation period or periods in which the duties were performed.)

(b)    **Hours Paid but not Worked.** One hour for each hour, in addition to the hours in subsection (a) above, for which the Employee is directly or indirectly paid or entitled to payment for reasons other than for the performance of duties during the applicable computation periods, such as direct or indirect pay for: vacation, holidays, jury duty, a period of sickness or disability for which he is ordinarily compensated under the Employer's accident and sickness plan, and similar paid periods of nonworking time. (These hours shall be counted in the computation period or periods in which the hours for which payment is made occur.)

(c)    **Involuntary Layoff.** One hour for each hour of involuntary layoff from employment with the Employer, as solely determined by the Employer under rules uniformly applied to all Hourly Employees in the Participating Group, up to the maximum period, if any, specified in the Supplement.

(d)    **Military Service.** The number of normally scheduled hours for each week the Employee is absent from employment due to service in the armed forces of the United States, provided the Employee returns therefrom to work as an Employee within the time prescribed by law relating to veterans' reemployment rights.

(e)    **Back Pay.** One hour for each hour for which the Employee is credited with compensation, irrespective of mitigation of damages, due to back pay which is either awarded or agreed to by the employer.

(f)    **Unpaid Leave of Absence.** One hour for each hour for which the Employee would normally be scheduled to work during a period of noncompensated leave of absence approved in writing by the Employer, under rules uniformly applied to all Employees, up to the maximum period, if any, specified in the Supplement, but only if such Employee returns to work within the time fixed by his Employer. If an Employee fails to return to active employment with the Employer at the expiration of such period of authorized absence, no Hours of Service shall be credited for such period.

When time records are not available or convenient for determining Hours of Service required to be credited under subsections (a), (b), (c), (e), and (f) above, the Employee shall be credited with 190 hours for each month or portion thereof for which the Employee would be required to be credited with at least one Hour of Service. Hours of Service shall be determined in accordance with reasonable standards and policies adopted by the Committee in conformance with section 2530.200b-2(b) and (c) of the Department of Labor regulations, which are incorporated herein by reference.

## 3.5 Vesting Service

The term "Vesting Service" (which prior to January 1, 1993 was also referred to as "Service") is used to determine whether an Employee's service prior to a Break in Service shall be reinstated if he is reemployed and to determine his eligibility for retirement benefits hereunder. An Employee shall receive credit for Vesting Service for his period of employment by the Employer and Affiliates determined in accordance with uniform and nondiscriminatory standards and policies adopted by the Committee, which standards and policies shall be consistently observed and applied, and which shall be subject to any modifications or exceptions specified in the Supplement applicable to his Participating Group; provided, however, that—

(a)    Vesting Service shall be determined in completed full years and fractions of years in excess of completed full years.

(b)    For any employment prior to January 1, 1976, an Employee's Vesting Service shall be equal to his period of "continuous employment" with the Employer through December 31, 1975 as defined and determined under the service and break in service provisions of the Plan as in effect on December 31, 1975.

(c)    For employment on and after January 1, 1976, an Employee shall receive credit for a year of Vesting Service for each calendar year in which he has at least 1,000 Hours of Service. If an Employee has fewer than 1,000 Hours of Service for any calendar year, he shall not receive credit for Vesting Service for that calendar year.

(d)    Vesting Service shall not be deemed to have been broken—

(1)    by any transfer of employment of an Employee between the Employers and/or any nonparticipating Affiliates; or

(2)    during such period as an Employee is receiving credit for Hours of Service under the Plan.

(e)    If an Employee who has had a Break in Service is subsequently reemployed by the Employer or Affiliate as an Employee, such Employee shall be treated as a new Employee for purposes of the Plan, except for the following provisions:

12

(1)    If at such Break in Service such Employee became eligible for a benefit under Article 4 hereof, the Vesting Service and Credited Service he had at such Break in Service shall be reinstated upon such reemployment.

(2)    (If (1) is not applicable) If the number of consecutive One-Year Breaks in Service does not equal or exceed the greater of five or the number of years of Vesting Service he had prior to his first One-Year Break in Service ending after such Break in Service, the Vesting Service and Credited Service such Employee had at such Break in Service shall be reinstated upon such reemployment.

For this purpose, "**One-Year Break in Service**" means any calendar year in which an Employee does not have more than 500 Hours of Service.

## 3.6 Credited Service

The term "Credited Service" is used to determine the amount of a Member's benefit. It means a Participant's Hours of Service for which he receives credit for Credited Service for purposes of the Plan, and which shall be subject to any modifications or exceptions specified in the Supplement applicable to his Participating Group, as follows:

(a)    For employment prior to January 1, 1976, a Participant shall receive credit for Credited Service equal to his period of "continuous employment" as described in section 3.5(b) above during which he made employee contributions if such contributions were required, as defined and determined under the service and break in service provisions of such plan as in effect on December 31, 1975.

(b)    For employment after December 31, 1975, the Participant's Hours of Service credited to him in each Plan Year shall be reduced by those Hours of Service specified in the Supplement and the Participant's full and fractional years of Credited Service shall be credited on the basis specified in the Supplement.

Provided, however, that no more than the maximum years of Credited Service specified in the Supplement shall be credited to any Member under the Plan.

Notwithstanding any other provisions of the Plan, in the event a Member has received distribution of his entire accrued retirement benefit under the Plan under the involuntary lump sum payment of a small amount under section 4.9, the Credited Service upon which such lump sum benefit was calculated shall thereupon be canceled, and shall be disregarded in the event of such Member's subsequent reemployment as an Hourly Employee.

## 3.7 Break in Service (unmodified)

A Break in Service is an interruption in Vesting Service and Credited Service for any one of the following reasons, as determined in accordance with uniform and nondiscriminatory standards and policies adopted by the Committee, which standards and policies shall be consistently observed and specified in the Supplement applicable to the Employee's Participating Group:

(a)     if the Employee quits;

(b)     if the Employee is discharged;

(c)     if the Employee fails to report for work upon recall from an involuntary layoff or if the maximum involuntary layoff period specified in the Supplement expires;

(d)     if the Employee fails to report for work within the period required under the law pertaining to veteran's reemployment rights after he is released from military service, and such break shall occur on the first day of absence for military service;

(e)     if the Employee fails to report for work on or prior to the first day after an approved leave of absence expires; or

(f)     if the Employee retires hereunder or dies.

Notwithstanding the foregoing, there shall be no Break in Service during any Plan Year during which an Employee has at least 501 Hours of Service (unless he retires or dies during such year) and the Break in Service shall be deemed to have occurred as of the first day of the Plan Year the Employee does not receive at least 501 Hours of Service following the event in (a)–(e) above if he has at least 501 Hours of Service in the year the event occurs.

(The fact that an Employee who is a Member becomes an Inactive Participant shall not constitute a Break in Service, but the foregoing rules shall continue to apply to such an Employee during the period he is an Inactive Participant.)

## 3.8 Parental, Family, or Medical Leave

In the case of an Employee whose break in Service occurs due to absence from work for maternity or paternity reasons, an amount up to 501 Hours of Service shall be credited to such person solely for the purpose of preventing a One-Year Break in Service from occurring. Such hours shall be credited only to the calendar year in which the absence from work begins if the Employee would thereby be prevented from incurring a One-Year Break in Service; otherwise, such hours shall be credited in the next calendar year, but again only to the extent necessary to prevent the Employee from incurring a One-Year Break in Service. For purposes of this section 3.8, absence from work for maternity or paternity reasons means an absence—

(a)     by reason of pregnancy of the individual.

(b)   by reason of the birth of a child of the individual.

(c)   by reason of the placement of a child with the individual in connection with the adoption of such child by such individual, or

(d)   for purposes of caring for such child for a period beginning immediately following such birth or placement.

This section 3.8 shall apply only for the purpose of determining whether an Employee's Vesting Service and Credited Service must be reinstated upon reemployment pursuant to section 3.5(e), and not for purposes of determining the amount of his Vesting Service and Credited Service. There shall be no duplication of credit between a period credited under this section 3.8 and a period for which Vesting Service credit is granted under section 3.5.

Effective as of August 5, 1993, the foregoing provisions shall also apply to an absence from employment, not to exceed 12 weeks, for which an Employee is entitled to leave under section 102(a) of the Family and Medical Leave Act of 1993.

## 3.9 Leased Employees

A person who is not an Employee of an Employer or Affiliate and who performs services for an Employer or an Affiliate pursuant to an agreement between the Employer or nonparticipating Affiliate and a leasing organization shall be considered a "leased employee" if he performed the services on a substantially full-time basis for a year or more and the services are performed under the primary direction and control of the service recipient. A person who is considered a "leased employee" of an Employer or nonparticipating Affiliate shall not be considered an Hourly Employee for purposes of participating in this Plan or receiving any contribution or benefit under this Plan. A leased employee shall be excluded from this Plan regardless of whether he participates in any plan maintained by the leasing organization. However, if a leased employee becomes an Hourly Employee as a result of subsequent employment with an Employer, he shall receive credit for Hours of Service and Vesting Service, but not Credited Service, for such employment as a leased employee. Notwithstanding the preceding provisions of this section, a leased employee shall be treated as an Employee for purposes of applying the requirements described in Code section 414(n)(3) and for purposes of determining the number and identity of "highly compensated employees" as defined in Code section 414(q)(7).

## 3.10 Military Leave

Notwithstanding any provision of this Plan to the contrary, effective as of December 12, 1994, contributions, benefits, and service credit with respect to qualified military service will be provided in accordance with Code section 414(u).

# Article 4. Benefits

## 4.1 Normal Retirement Benefits

(a)    **Eligibility.** A Participant or Inactive Participant whose Vesting Service terminates on or after his Normal Retirement Age shall be eligible to receive a normal retirement benefit under the Plan. in accordance with and subject to the provisions of the Plan.

(b)    **Amount.** The monthly amount of normal retirement benefit payable to a Member eligible therefor under (a) above shall be equal to the Member's Credited Service multiplied by the benefit rate specified in the Supplement or shall be otherwise determined as provided in the Supplement.

(c)    **Commencement and Duration.** Monthly normal retirement benefit payments shall begin as of the retired Member's Normal Retirement Date. When monthly payments begin, they shall be paid monthly thereafter as of the first day of each succeeding month during the Member's lifetime. subject to the optional forms of payment in sections 4.7 and 4.8 and the reemployment provisions in section 4.10.

(d)    **Age 70 1/2 Commencement.** The distribution of a Member's benefits shall commence not later than April 1 of the calendar year following the later of the year in which the Member attains age 70 1/2 or the year in which the Member retires. The Member's benefits shall be actuarially adjusted to take into account the period beginning on the April 1 following the calendar year in which the Member attains age 70 1/2 or. if later. on the date the Member attains five years of Vesting Service and ending on the date the Member's benefit commences. in accordance with Code section 401(a)(9)(C)(iii). and such actuarial adjustment shall reduce the benefit accrual the Member would have otherwise received for such period. In the case of a Member who is a 5-percent owner of the Employer. or a Member who attains age 70 1/2 on or before December 31. 1998 and elects such commencement. the distribution of the Member's benefits shall commence not later than April 1 of the calendar year following the year in which the Member attains age 70 1/2.

## 4.2 Early Retirement Benefits

(a)    **Eligibility.** A Participant or Inactive Participant whose Vesting Service terminates on or after he attains his Early Retirement Age but before his Normal Retirement Age shall be eligible to receive an early retirement benefit under the Plan. in accordance with and subject to the provisions of the Plan. Such eligible Member must file an application for an early retirement benefit in order to receive such benefit.

(b)    **Amount.** A retired Member's monthly early retirement benefit shall be an amount computed in the same manner as a normal retirement benefit under section 4.1(b) as in effect when his Vesting Service terminates. and based on his Credited Service as

16

of his termination of Vesting Service, but shall be reduced, for the earlier date at which such benefit payments actually begin prior to the Member's Normal Retirement Age, in accordance with the early commencement provisions specified in the Supplement.

(c)    **Commencement and Duration.** Monthly early retirement benefit payments shall begin as of the retired Member's Early Retirement Date, unless he elects to have them begin on the first day of any calendar month thereafter but not later than the first of the month coincident with or next following his Normal Retirement Age. When monthly payments begin, they shall be paid monthly thereafter as of the first day of each succeeding month during his lifetime, subject to the optional forms of payment in sections 4.7 and 4.8 and the reemployment provisions in section 4.10.

## 4.3 Disability Retirement Benefits

(a)    **Eligibility.** If the employment of a Participant, but not an Inactive Participant, terminates (prior to retirement under section 4.1, 4.2, or 4.4) because of a Disability after he attains his Disability Retirement Age, he shall be eligible to receive a disability retirement benefit under the Plan, in accordance with and subject to the provisions of the Plan.

(b)    **Amount.** The monthly disability retirement benefit payable to a Participant eligible therefor under (a) above shall be an amount computed in the same manner as a normal retirement benefit under section 4.1(b), based on his Credited Service at the time of his Disability, without reduction for commencement prior to his Normal Retirement Age.

Or, the monthly amount of a Participant's disability retirement benefit, if any, shall be determined as provided in the Supplement.

(c)    **Commencement and Duration.** Monthly disability retirement benefits shall begin as of the Participant's Disability Retirement Date. When monthly payments begin, they shall be payable monthly thereafter as of the first day of each succeeding month during his lifetime, subject to the optional forms of payment in sections 4.7 and 4.8, and provided further that—

(1)    If such Participant's Disability ceases prior to his Normal Retirement Age or if he ceases to receive disability benefits under the Social Security Act, he shall lose his eligibility for benefits under this section 4.3. If he resumes employment with the Employer as an Hourly Employee promptly after such cessation, he shall again accumulate benefits as a Participant, and after his reemployment ceases, he may be eligible for a normal, early, or deferred vested retirement benefit under the Plan.

(2)  If upon cessation of such Disability or cessation of Social Security disability benefits the Participant is not reemployed by the Employer, he may, provided that he meets the age and service eligibility requirements for such benefit, apply for a normal, early, or deferred vested retirement benefit under the Plan, but such benefit shall be reduced by the value of disability retirement benefits previously paid.

Or, commencement and duration of disability retirement benefits shall be as specified in the Supplement.

## 4.4 Deferred Vested Retirement Benefits

(a)  **Eligibility.** A Participant or Inactive Participant whose Vesting Service terminates after he attains his Vested Retirement Age and before his Early Retirement Age shall be eligible to receive a monthly deferred vested retirement benefit under the Plan, in accordance with and subject to the provisions of the Plan. Such eligible Member must file an application for a deferred vested retirement benefit in order to receive such benefit.

(b)  **Amount.** A terminated Member's monthly deferred vested retirement benefit shall be an amount computed in the same manner as a normal retirement benefit, determined as set forth in section 4.1(b) above, based on the benefit rate and his Credited Service as of the date his Vesting Service terminates. If the deferred vested retirement benefit begins before the Member's sixty-fifth birthday, it shall be reduced for early commencement in the same manner as an early retirement benefit is reduced under section 4.2(b), or it shall be otherwise reduced as specified in the Supplement.

(c)  **Commencement and Duration.** Monthly deferred vested retirement benefit payments shall begin as of the first day of the month coincident with or next following the Member's sixty-fifth birthday (if the Member is then living), except the Member may elect to have his deferred vested retirement benefit begin as of the first day of any month coincident with or next following his Vested Retirement Date. When monthly payments begin, they shall be paid monthly thereafter as of the first day of each succeeding month during the Member's lifetime, subject to the optional forms of payment in sections 4.7 and 4.8 and the reemployment provisions in section 4.10.

## 4.5 Maximum Annual Benefits

Notwithstanding any other provisions of this Plan to the contrary, the annual benefit provided under the "defined benefit plan" from Employer and Affiliate contributions for any Member for any Plan Year, which shall be the "limitation year," shall in no event exceed the lesser of (a) or (b) below:

(a)  **Defined Benefit Plan Limitation.** An amount equal to the limitation on benefits under defined benefit plans as described in Code section 415(b) and related sections.

the provisions of which are incorporated herein by reference. "The defined benefit plan" means this Plan and all other defined benefit plans of the Employer and its Affiliates, considered as one plan; except that after the limitations have been determined, any reduction in benefits in the defined benefit plan will be made in any such other defined benefit plan first and in this Plan last.

(b)    **Dual Plan Limitation.** If a Member is also a participant in any defined contribution plan of the Employer and its Affiliates, and if the sum of the Member's defined benefit plan fraction and defined contribution fraction for any year exceeds one, an amount of annual benefit reduced to the extent necessary to reduce such sum to one, determined in accordance with Code section 415(e) and related sections, the provisions of which are incorporated herein by reference; provided, however, that such dual plan limitation shall not be applicable for Plan Years beginning after December 31, 1999.

The "RPA '94 Section 415 Effective Date" under Revenue Ruling 98-1 shall be January 1, 1995. The maximum benefit payable under the Code section 415 limitations in effect prior to the RPA '94 Section 415 Effective Date shall not be protected. For purposes of determining the equivalent actuarial value under this section 4.5 of a benefit payable in a form subject to Code section 417(e)(3), the "applicable mortality table" and the "applicable interest rate" shall be as defined in the first three sentences of section 4.9(2).

## 4.6 Automatic Preretirement Survivor Annuity for Active and Terminated Married Vested Members

(a)    **Eligibility.** A Participant's or Inactive Participant's surviving spouse shall be eligible to receive a preretirement survivor annuity under the Plan, in accordance with and subject to the provisions of the Plan, if such Member—

(1)    has at least one Hour of Service on or after August 23, 1984; and

(2)    has attained his Vested Retirement Age or other Retirement Age; and dies

(3)    while employed by the Employer or Affiliate, or after his Vesting Service has terminated; and

(4)    prior to his Benefit Commencement Date.

(b)    **Amount.** The monthly amount of the surviving spouse benefit payable to a spouse eligible therefor pursuant to subsection (a) above shall be equal to—

(1)    **65 or Older.** 50 percent of the reduced amount of the monthly normal retirement benefit computed under the provisions of section 4.1 which the deceased Member would have been entitled to receive beginning as of his Normal Retirement Age; or

(2) **Under Age 65.** For a deceased Member who had attained his Early Retirement Age or his Vested Retirement Age, in each case 50 percent of the reduced amount of the Member's early retirement benefit computed under the provisions of section 4.2 which the deceased Member would have been entitled to receive at or after his Early Retirement Age.

whichever the Member was eligible for at the time of death, if he had retired on the day immediately preceding the day on which he died, with the post-retirement surviving spouse benefit coverage in effect under section 4.7. Such reduced amount shall be computed giving effect to the cost of the joint and survivor form of payment under section 4.7, and the appropriate early commencement reduction factors under section 4.2(b) or 4.4(b).

(c)     **Commencement and Duration.**

(1)     The monthly surviving spouse benefit determined under (b)(1) above shall be payable to the spouse for life, beginning as of the first day of the calendar month coincident with or next following the date of the Member's death.

(2)     The monthly surviving spouse benefit determined under (b)(2) above shall be payable to the spouse for life, beginning on the first day of the calendar month coincident with or next following:

(A)     the date the Member would have attained his Early Retirement Age; or

(B)     the date of the Member's death, if later than his Early Retirement Age.

Notwithstanding the foregoing, the surviving spouse may elect to defer commencement of the benefit until the first day of the month following the date the Member would have attained age 65.

**4.7 Automatic Post-Retirement (Joint and Survivor) Surviving Spouse Benefits**

(a)     **Eligibility and Conditions.** In lieu of the monthly normal retirement benefit otherwise payable under section 4.1, or the monthly early retirement benefit otherwise payable under section 4.2, or the monthly disability retirement benefit, if any, otherwise payable under section 4.3, or the monthly deferred vested retirement benefit otherwise payable under section 4.4 beginning after the Member's Early Retirement Age, a married Participant or Inactive Participant who retires with benefits payable under such section shall be deemed to have elected a reduced amount of monthly retirement benefit payable to him with the provision that if his spouse (to whom he is then married) shall be living at the effective date of the election and also at his death after such election shall have become effective, a surviving spouse benefit shall be payable to his spouse during his spouse's further lifetime. Such election is subject to the following conditions:

(1) **Effective Date.** The effective date of such automatic election shall be the Member's Benefit Commencement Date, provided that the notice and written explanation procedures have been met for the Member.

(2) **Waiver.** A Member may prevent the election provided in this section 4.7 only by executing a specific written waiver of such election on a form approved by the Committee and filing it with the Committee in accordance with such rules therefor adopted by the Committee. Such waiver shall be filed during the 90-day period ending on the Member's Benefit Commencement Date.

(3) **Spousal Consent.** An election to waive the automatic joint and survivor spouse benefit shall not take effect unless the Member's spouse irrevocably consents in writing to such election, which consent specifies that any further waiver or beneficiary designation by the Member shall only be with spousal consent, and such consent acknowledges the effect of such election and is witnessed by a person designated by the Committee or a notary public. Spousal consent to such waiver shall not be required if the Member establishes to the satisfaction of the Committee that such consent may not be obtained because there is no spouse, because the spouse cannot be located, because the Member is legally separated from his spouse or has been abandoned by his spouse, or because of such other circumstances as the Secretary of the Treasury may by regulation prescribe.

(4) **Revocation.** If the Member has filed a specific written waiver of such election, he may revoke such waiver at any time during the period which he could waive such election, as set forth in paragraph (2) above, by executing a specific revocation thereof on a form approved by the Committee and filing it with the Committee. Further, a subsequent specific written waiver of the election may then be made in accordance with paragraphs (2) and (3) above.

(5) **Notice and Explanation to Members.** The Committee shall provide to each Member (by mail or personal delivery), within 90 days after the time he notifies the Employer of his intent to retire, a written explanation of the joint and survivor surviving spouse benefit. Such explanation shall describe the terms and conditions of such benefit, the Member's right to make (and the effect of) an election to waive such benefit, the right of the Member's spouse to consent in writing to such waiver, and the right to make (and the effect of) a revocation of an election to waive such benefit. The Member may elect to waive the requirement that such explanation be provided at least 30 days before the Benefit Commencement Date, provided that the distribution to the Member begins more than seven days after such explanation is provided and provided that such explanation includes notification that the Member has at least 30 days to consider an election to waive the automatic joint and survivor spouse benefit.

(b)    **Amount of Benefits.**

(1)  **Member's Benefit.** For a married Member who is deemed to have made the election pursuant to this section 4.7 (and who does not waive it), the reduced amount of the Member's monthly retirement benefit referred to in subsection (a) above shall have a value which is the Actuarial Equivalent of the retirement benefit otherwise payable to the Member, giving effect to the cost of the election under this section 4.7.

(2)  **Spouse Benefit.** The surviving spouse benefit payable to the surviving spouse of a Member who is deemed to have made an election pursuant to this section 4.7 and who dies after such election becomes effective, whether or not the spouse is married to the Member at the date of the Member's death, shall be a monthly benefit for the further lifetime of such surviving spouse equal to 50 percent of the reduced amount of such Member's monthly retirement benefit as determined in subsection (b)(1) above.

## 4.8 Post-Retirement Optional Retirement Benefits

Upon the written request of a Participant or Inactive Participant who is entitled to receive normal, early, disability, or deferred vested retirement benefits, filed with the Committee in accordance with rules governing such requests (including, if married, a waiver of the automatic election of the joint and survivor surviving spouse benefit under section 4.7), the retirement benefit to which the Member is entitled as provided hereunder shall be payable, at the time such benefits are to begin, under the following methods of payment and various options then made available by the Committee, and subject to the following conditions:

(a)  **Option 1—Contingent Annuitant Option.** A Member may elect to receive a decreased retirement benefit during his lifetime and have a specified percentage, as designated by the Member, continued after his death to another person, called a Contingent Annuitant, during the lifetime of the Contingent Annuitant, should such Contingent Annuitant survive him. The continuation percentages applicable to the Participating Group shall be as specified in the Supplement.

(b)  **Option 2—Ten Years Certain and Life Option.** A Member may elect to receive a reduced retirement benefit during his lifetime, with the provision that if his death occurs before he has received 120 monthly payments, such payments will continue to his designated Beneficiary until a total of 120 monthly payments have been made to the Member and his Beneficiary combined; or, if such Beneficiary shall have predeceased the Member or shall die prior to receiving his full number of payments, the discounted value of the remaining monthly payments will be paid in a lump sum to the Member's estate. Such discounted value shall be computed based on the actuarial assumptions specified in section 4.9.

The monthly amount payable under the method of payment and various options available shall have a value which is the Actuarial Equivalent of the monthly retirement benefit otherwise payable to the Member. Option elections hereunder shall be consistent with Treasury regulations under Code section 401(a)(9) pertaining

to required distributions including section 1.401(a)(9)-2 of such regulations (the "minimum distribution incidental benefit" or "MDIB" rule).

(1)  In no event shall the Member select an option hereunder which would extend the payment period longer than—

    (A)  the lifetime of the Member or the joint lives of the Member and the designated beneficiary, or

    (B)  the Member's life expectancy or the joint life expectancies of the Member and the designated beneficiary; or

(2)  Effective as of January 1, 1989, the MDIB rule described above shall automatically be satisfied if the Member's spouse is his designated beneficiary or if distribution is made under Option 2 above. In the case of a distribution made under Option 1 above in which the survivor is someone other than the Member's spouse, the MDIB rule will automatically be satisfied for the 50 percent to survivor option and will automatically be satisfied—

    (A)  for a 100 percent to Contingent Annuitant option, if the Contingent Annuitant is no more than ten years younger than the Member.

    (B)  for a 75 percent to Contingent Annuitant option, if the Contingent Annuitant is no more than 19 years younger than the Member, and

    (C)  for a 66 2/3 percent to Contingent Annuitant option, if the Contingent Annuitant is no more than 24 years younger than the Member.

(3)  If the distribution of a Member's benefits has begun under this section 4.8 and the Member dies before his entire interest has been distributed to him, the remaining portion of the Member's benefits will be distributed at least as rapidly as under the method of distribution in force at the date of his death.

(4)  If a Member dies prior to the required commencement date and prior to the commencement of the payment of benefits, the Member's accrued benefit will be distributed within five years after the death of such Member except as permitted under subsections (5) and (6).

(5)  If—

    (A)  any portion of the Member's benefits are payable to a designated Beneficiary;

    (B)  such portion will be distributed over the life of such designated Beneficiary or over a period not extending beyond the life expectancy of the Beneficiary, and

(C)   such distributions begin not later than one year after the date the Member died, or such later date as the Secretary of the Treasury may by regulations prescribe.

the portion referred to in subsection (5)(A) shall be treated as distributed within the time required under subsection (4).

(6)   If the designated Beneficiary referred to in subsection (5)(A) is the surviving spouse of the Member, the date on which distributions are required to begin under subsection (5)(C) shall not be earlier than the date on which the Member would have attained age 70 1/2.

Distributions under the Plan made for calendar years beginning before January 1, 2002 shall be made in accordance with Treasury regulations under section 401(a)(9) of the Code, including section 1.401(a)(9)-2, as proposed in 1987.

With respect to distributions under the Plan made for calendar years beginning on or after January 1, 2002, the Plan will apply the minimum distribution requirements of Code section 401(a)(9) in accordance with the regulations under Code section 401(a)(9) that were proposed on January 17, 2001, notwithstanding any provision of the Plan to the contrary. The prior sentence shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Code section 401(a)(9) or such other date as may be specified in guidance published by the Internal Revenue Service.

## 4.9 Payment of Small Amounts

Any other provisions of the Plan notwithstanding, for a Member whose Vesting Service terminates, if the present value of—

(a)   the Member's monthly retirement benefit under section 4.1, 4.2, or 4.3 payable at the Member's Benefit Commencement Date, or a monthly benefit under section 4.4 expressed as a life annuity commencing at the Member's sixty-fifth birthday, or

(b)   the preretirement survivor annuity payable under section 4.6

shall be $3,500 or less as to distributions payable prior to January 1, 1998, or $5,000 or less as to distributions payable on and after January 1, 1998, such amounts shall be payable as soon as administratively feasible after a Member's Vesting Service terminates, in a lump sum of equivalent actuarial value. For purposes of this section 4.9—

(1)   Equivalent actuarial value calculations for lump sum payments made prior to December 1, 1995 shall be based on the 1984 Unisex Pension Mortality Table and PBGC interest rates. PBGC interest rates are the interest rates used by the Pension Benefit Guaranty Corporation to determine the present value of annuities for terminated pension plans. The Plan shall utilize the PBGC rates in effect on January 1 of the Plan Year in which the Member's Benefit Commencement Date is to occur. PBGC immediate annuity rates shall be used for lump sum payments made after the

Member's Early Retirement Age, and PBGC deferred annuity interest rates shall be used for lump sum payments made before the Member's Early Retirement Age; and

(2)    Equivalent actuarial value calculations for lump sum payments made on and after January 1, 1995 shall be based on the 1983 Group Annuity Mortality Table (weighted 50 percent males, 50 percent females, the "applicable mortality table") and the "applicable interest rate." The "applicable interest rate" for a particular Plan Year is the annual rate of interest on 30-year Treasury securities (unrounded) for the November (the "look-back month") preceding the Plan Year in which such lump sum is calculated. The November applicable interest rate shall be used for all lump sum calculations made in the following Plan Year (the "stability period"). Notwithstanding the foregoing provisions of this paragraph (2), lump sum payments made between January 1, 1995 and November 30, 1995 shall be based on the actuarial assumptions specified in paragraph (1) above.

The assumptions in paragraph (2) above shall also apply to lump sum payments after November 30, 1995 of small amounts for previously terminated vested Participants whose employment terminated prior to December 1, 1995.

## 4.10 Reemployment

If a Member is reemployed as an Employee, his benefit payments shall be discontinued and shall not be paid or accrue during the period of such reemployment, his previous election of form of payment shall be canceled, and he shall have the Vesting Service and Credited Service he had at the time of his retirement reinstated. Upon his subsequent retirement, his eligibility for a benefit and the amount of the benefit shall be determined, calculated, and paid as if he were then first retired based upon such reinstated Vesting Service and Credited Service, plus the Vesting Service and Credited Service he earned following the date of reemployment, but such benefit shall be actuarially reduced to account for any retirement benefit payments he may have received prior to his reemployment, where such value is determined using a 5.5 percent interest rate up to the current age. In no event will a Member's retirement benefit at his subsequent retirement (after reduction for any benefit payments he may have received prior to his reemployment) be less than his benefit at his prior retirement.

## 4.11 Special Employment/Reemployment Provisions

(a)    Applicability. The provisions of this section 4.11 shall apply only—

    (1)    if a Member receiving a normal, early, disability, or deferred vested retirement benefit has a benefit suspended under section 4.10 for any month of reemployment after his Normal Retirement Age in which he has 40 or more Hours of Service; or

    (2)    if a Member receiving a normal, early, disability, or deferred vested retirement benefit has a benefit suspended under section 4.10 for any month of

reemployment after his Normal Retirement Age in which he has 40 or more Hours of Service: or

(b) **Suspension Procedures.** Upon a suspension or delayed commencement of benefits described in subsection (a) above, the Committee shall notify the Member thereof, shall afford him a review of such suspension or delayed commencement under the procedure specified in section 7.9 of the Plan and shall otherwise administer such suspension or delayed commencement and any subsequent resumption of benefit payments in a manner consistent with Department of Labor regulations section 2530.203-3.

(c) **Employment for Fewer than 40 Hours of Service a Month.**

Notwithstanding the provisions of section 4.10—

(1) No benefit payments once they have commenced shall be suspended for any month after Normal Retirement Age in which a Member is reemployed for fewer than 40 Hours of Service; and

(2) In the event a Member remains in employment after Normal Retirement Age for fewer than 40 Hours of Service in any month, his normal retirement benefit shall be payable and begin as of the first day of the calendar month next following the month in which he first has fewer than 40 of such Hours of Service.

## 4.12 Application for Benefits and Data

Each person eligible for a benefit shall apply for such benefit by signing an application form furnished by the Committee. Each such person must furnish to the Committee, or the designated agent, such evidence, data, or information as the Committee considers desirable to carry out the Plan. The benefits of the Plan for each person are provided on the condition that such person furnish promptly true and complete evidence, data, and information requested by the Committee. Evidence required of anyone under the Plan may be by certificate, affidavit, document, or other information which the person acting on it considers pertinent and reliable, and such evidence shall be signed, made, or presented by the proper party or parties.

## 4.13 Direct Rollovers of Eligible Rollover Distributions

Not later than January 1, 1993, the Committee shall establish procedures under which a "distributee" (as defined in subsection (a) below) entitled to a single sum payment of a small amount under section 4.9 or other "eligible rollover distribution" (as defined in subsection (b) below) which equals $200 or more may authorize a "direct rollover" (as defined in subsection (c) below) of all of such distribution, or part of such distribution if the amount rolled over is at least $500, excluding any employee contributions, in cash to an "eligible retirement plan" (as defined in subsection (d) below).

(a)     "Distributee" means and includes an Employee or a former Employee. In addition, the Employee's or former Employee's spouse or former spouse who is an alternate payee under a qualified domestic relations order, as defined in Code section 414(p), are distributees with regard to the interest of the spouse or former spouse.

(b)     "Eligible rollover distribution" means any distribution of all or any portion of the balance to the credit of the distributee, except that such term does not include—

   (1)     any distribution that is one of a series of substantially equal periodic payments (payable not less frequently than annually) made for the life or the life expectancy of the distributee or the joint lives or joint life expectancies of the distributee and his designated beneficiary, or for a specified period of ten years or more,

   (2)     any distribution to the extent it is required under the minimum distribution rules of Code section 401(a)(9), and

   (3)     any portion of any distribution that is not included in the recipient's gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(c)     "Direct rollover" means a payment by the Plan to the eligible retirement plan specified by the distributee.

(d)     "Eligible retirement plan" means—

   (1)     an individual retirement account described in Code section 408(a),

   (2)     an individual retirement annuity described in Code section 408(b),

   (3)     an annuity plan described in Code section 403(a), or

   (4)     a qualified trust described in Code section 401(a), provided that such plan accepts the distributee's eligible rollover distribution; provided, further, that in the case of an eligible rollover distribution to a surviving spouse, an eligible retirement plan is an individual retirement account or an individual retirement annuity.

# Article 5. Special Retirement and Death Benefits for Certain Members

## 5.1 Special Retirement and Death Benefits

In the event that Hourly Employees in a Participating Group previously have made employee contributions to the Plan or a predecessor plan or in the event that Hourly Employees in a Participating Group have individual separate accounts under the Plan, and any such contributions or accounts have remained in the Plan on and after January 1, 1993, any special retirement or death benefits for such Participating Group shall be as specified in the Supplement.

# Article 6. Financing

## 6.1 Financing

The Company has executed a Trust or Trusts with a Trustee or Trustees or has entered into one or more contracts with one or more Insurance Companies, or both, to establish a Retirement Fund. The Employers shall make their contributions or payments to such Retirement Fund and payments under the Plan shall be made therefrom. The Company has authority, in its discretion, to modify any Trust or insurance contract, remove any Trustee or change Insurance Companies at any time.

## 6.2 Employer Contributions

Each Employer shall make such contributions to the Retirement Fund as shall be determined by the Actuary to be required under accepted actuarial principles to at least be sufficient to maintain each separate plan for each of its Participating Groups as a qualified employee pension plan meeting the minimum funding standard requirements of the Code. (Forfeitures arising under each separate plan for a Participating Group for any reason shall be used as soon as possible to reduce the Employer's contributions under the Plan for that Participating Group.) Except as provided in Title I and IV of the Act, all benefits under the Plan shall be payable only from the Retirement Fund.

## 6.3 Participant Contributions

Contributions by Participants are neither required nor permitted under the Plan.

## 6.4 Exclusive Benefit of Members

It is hereby declared to be the Company's intention that this Plan shall be maintained for the exclusive benefit of Members and their beneficiaries and is intended to be a qualified plan under the provisions of the Code and the Act. In no event shall the Employer have any right, claim, or beneficial or reversionary interest in any Trust asset, and the Trustee shall make no payment or other distribution to the Employer. Nothing contained in the Plan or Trust shall be construed to impair the Company's right to see to the proper administration of the Trust in accordance with Plan provisions.

## 6.5 Nonreversion

The Employer shall have no right, title, or interest in the contributions made by it under the Plan and no part of the Retirement Fund shall revert to it or for its benefit, except that—

(a)    Employer contributions under each separate plan are expressly conditioned upon qualification of the separate plan as to the Employer. In the event that the Internal Revenue Service initially determines that the separate plan as to any Participating Group does not constitute a qualified employee pension plan meeting the requirements of Code section 401(a) as to any Employer's initial adoption of the Plan, then such separate plan shall be null and void as to such Participating Group from the Coverage Date applicable to such Participating Group. Any funds in the separate asset account of the Retirement Fund for such Participating Group at the

29

time of such unfavorable determination which have been contributed by the Employer for that Participating Group shall be returned to that Employer within one year after the date of such denial of qualification unless the Plan is amended and a favorable determination obtained as to the separate plan for such Participating Group as of the Coverage Date applicable to such Participating Group.

(b)    Upon termination of the Plan (after a favorable determination described in (a) has been obtained) with respect to a Participating Group and the allocation and distribution of the separate asset account of the Retirement Fund for that Participating Group as provided in section 9.3, any funds remaining in the separate asset account of the Retirement Fund for that Participating Group after the satisfaction of all fixed and contingent liabilities under the Plan as to that Participating Group may revert to the Employer of that Participating Group.

(c)    If a contribution is made to the Retirement Fund by the Employer by a mistake of fact, then such contribution may be returned to the Employer within one year after the payment of the contribution.

(d)    Employer contributions are expressly conditioned upon deductibility of contributions under Code section 404, and if any part or all of a contribution is disallowed as a deduction under Code section 404 as to any Employer, then to the extent a contribution is disallowed as a deduction, it may be returned to the Employer within one year after the later of the date of payment of the contribution or the date the deduction for the contribution was disallowed.

Any contributions returned to the Employer under subsection (a), (c), or (d) above shall not include any investment earnings thereon but shall be net of any investment losses thereon.

## 6.6 Separate Accounting of Assets Constituting a Separate Plan for Each Participating Group

Unless one or more Supplements shall specify that a separate plan shall be maintained for two or more Participating Groups, there shall be a separate accounting of assets maintained by the Committee under the Retirement Fund with respect to each Participating Group. The separate asset account for each Participating Group shall be credited with contributions made on behalf of its Members and with its allocable share of investment income and charged with benefits paid to its Members and with its allocable share of investment losses or expenses. The separate asset account for each such Participating Group shall be used only for providing benefits for its Members during the continuation and upon termination of that Participating Group's participation in the Plan, and thus shall constitute a separate plan for such Participating Group. Assets of the Retirement Fund held for one such separate plan shall not be used to provide benefits for any other such separate plan.

## 6.7 Payment of Expenses

All administrative expenses of the Plan. including legal. accounting. and actuarial fees. and fees and expenses of the Trustee shall be payable from the Retirement Fund. except to the extent that such fees and expenses are paid by the Company in its sole and absolute discretion. Such expenses shall include any expenses incident to the functioning of the Plan. including. but not limited to. the fees described above and fees of other specialists and other costs of administering the Plan.

## 6.8 Investment in Annuity Contracts

To the extent permitted by regulation 1.401(f)-1 and such other regulations as may be adopted. this Plan may implement the payment of benefits by purchase by the Retirement Fund from an Insurance Company and distribution to the Member of a nontransferable annuity contract. Such annuity contract shall be structured so that it would. if it were a trust. be a qualified trust under Code section 401(a).

31

# Article 7. Administration

## 7.1 Appointment of Committee

The Board of Directors of Carlisle Corporation shall appoint a Committee, to be known as the "Carlisle Corporation Pension and Insurance Committee," of three to five members to administer this Plan, one of whom shall be designated by the Board as Chairman. Members of this Committee may be chosen without regard to whether or not they are officers, directors, or Employees of the Employer. Any member of the Committee may be removed at any time by the Board. Vacancies on the Committee, arising for any reason whatsoever, shall be filled by the Board. Any member of the Committee may resign by delivering his written resignation to the Board.

## 7.2 Organization and Operation of Committee

The Chairman, when present, shall preside at meetings of the Committee. In his absence, those present will choose one of their number to act as Chairman. The Committee shall appoint a Secretary, who shall keep the minutes of the meetings and perform such other duties as may be assigned to him by the Committee. The Secretary need not be a member of the Committee. The Committee shall act at any meeting or in writing without a meeting by an agreement of the majority of members then in office, and the action of such majority shall control. The Committee may authorize one or more of its members to execute documents on behalf of the Committee.

Any act which an agreement by the majority of the Committee members authorizes or requires the Committee to do may be specifically delegated in writing to one or more members of the Committee. If such act is thus specifically delegated to one or more members of the Committee, such member or members shall be solely responsible for any activities involved in such act.

## 7.3 Powers and Duties of Committee

The Committee shall have the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as the plan administrator and a named fiduciary under the Act. The powers and duties of the Committee, in accordance with the Plan, shall include, but are not limited to, the following:

(a)    to appoint a local administrator to manage the Plan at any location of the Employer;

(b)    to adopt from time to time such bylaws, procedures, and forms as the Committee considers appropriate in the operation and administration of the Plan;

(c)    in its discretion, to establish rules and procedures needed for its administration of the Plan and the transaction of Plan business;

(d)    to have the exclusive right, in its discretion, to make any finding of fact necessary or appropriate for any purpose under the Plan, including but not limited to the

32

determination of the eligibility for and the amount of any benefit payable under the Plan;

(e)  in its discretion, to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision;

(f)  to direct the Trustee as to the distribution of benefits and as to the payment of other amounts payable from the Trust in accordance with the provisions of the Plan;

(g)  to receive information and review copies of all records of Employer contributions and Trust accountings;

(h)  to pay all reasonable and necessary expenses of the Plan from the assets of the Retirement Fund under section 6.7 to the extent that they are not paid by the Employer;

(i)  to exercise general administration of the Plan except to the extent responsibilities are expressly conferred on others;

(j)  to be the designated agent of the Plan for the service of legal process, or to designate the Employer or some other individual to be the designated agent for the service of legal process;

(k)  to establish a funding policy in accordance with section 7.4 and communicate this policy to the Trustee;

(l)  in its discretion, to approve or deny claims for Plan benefits made by Members and beneficiaries;

(m)  to review appeals made by Members or beneficiaries ("claimants") who have had their claims for benefits under the Plan denied in whole or in part in accordance with section 7.9;

(n)  to allocate fiduciary duties and responsibilities (other than Trustee responsibilities) among members of the Committee or other named fiduciaries appointed by the Committee to act in such capacity and to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than Trustee responsibilities) under the Plan to the extent that it is deemed advisable by the Committee. For purposes of this subsection. Trustee responsibility shall mean any responsibility provided in the Trust to manage or control the assets of the Plan. other than power of the Committee to appoint an investment manager in accordance with section 402(c)(3) of the Act. Before the Committee delegates any duties or responsibilities as provided herein. it must first obtain approval for such delegation from the Board of Directors. The Committee shall periodically review the

performance of any person to whom it has delegated such responsibilities. It is intended under this Plan that each fiduciary shall be responsible for the proper exercise of its own powers, duties, responsibilities, and obligations under the Plan and shall not be responsible for any act or failure to act of another fiduciary:

(o)    to employ advisors to the Plan, such as an Actuary, an accountant engaged on behalf of all Plan Members, an attorney, and such other persons as it shall deem necessary or desirable to advise the Committee for its consideration and action in its management, administration, interpretation, and application of the Plan; and

(p)    to appoint, subject to approval of the Board of Directors, an investment manager or managers to manage (including the power to acquire or dispose of) any assets of the Plan; providing, however, that any such investment advisor shall be qualified as an investment manager within the meaning of Section 3(38) of the Act, and no party except such investment advisor shall be responsible for the investment decisions of such investment advisor, in accordance with Section 405(d) of the Act.

All findings of fact, determinations, interpretations, and decisions of the Committee shall be conclusive and binding upon all persons having or claiming to have any interest or right under the Plan and shall be given the maximum possible deference allowed by law. Benefits under the Plan shall be paid only if the Committee in its sole discretion determines that a Member is entitled to the benefits.

## 7.4 Funding Policy

The Committee from time to time shall approve the actuarial method and assumptions to be used in determining costs and liabilities under the Plan and, upon review of the short- and long-run financial needs of the Plan shall formulate and periodically revise a general funding policy to govern the Employer contributions to the Fund. The Actuary appointed by the Committee shall make periodic actuarial valuations of the liabilities of the Plan and shall advise the Committee of his recommendations with regard to adoption of an actuarial method, assumptions, and rates of Employer contributions. Such method, assumptions, and recommended rates of Employer contributions shall be communicated by the Committee to the Employer.

## 7.5 Accounts and Reports

The Committee shall maintain records showing the fiscal operations of the Plan and shall keep in convenient form such data relating to maintenance of accounts and records under the Plan. The Committee shall prepare annually a report showing in detail the assets and liabilities of the Plan and giving a brief account of the operation of the Plan for the past year. Such report shall be submitted to the Board and shall be filed in the office of the Secretary of the Committee.

## 7.6 Compensation and Expense of Committee Members

The members of the Committee shall serve without compensation with respect to their services rendered on behalf of or for the Plan. All expenses of the Committee shall be paid

from the Retirement Fund unless the Committee directs payment by the Company or Employer. Such expense shall include any expenses incidental to the functioning of the Committee, including, but not limited to, fees for actuarial services, legal services, accounting services, and other costs of administering the Plan.

## 7.7 Discretionary Powers

Whenever in the Plan or Trust discretionary powers are given to the Committee, it shall have absolute discretion and its decision shall be binding upon all persons affected thereby. The Committee shall exercise its discretion in a nondiscriminatory manner.

## 7.8 Bond

The Committee shall obtain a bond in accordance with Section 412 of the Act that shall cover every fiduciary of the Plan and every person who handles funds or other property of the Plan ("plan official"). Said bond will insure the Plan against loss by reason of acts of fraud or dishonesty on the part of every fiduciary and plan official, directly or through connivance with others.

## 7.9 Appeals from Denial of Claims

(a)     **Claims Before January 1, 2002.** This subsection (a) shall apply to claims for benefits under the Plan that are filed before January 1, 2002.

If any claim for benefits under the Plan is wholly or partially denied, the claimant shall be given notice in writing within a reasonable period of time after receipt of the claim by the Plan (not to exceed 90 days after receipt of the claim or, if special circumstances require an extension of time, written notice of the extension shall be furnished to the claimant and an additional 90 days will be considered reasonable) of such denial, written in a manner calculated to be understood by the claimant, setting forth the following information:

(1)    the specific reasons for such denial;

(2)    specific reference to pertinent Plan provisions on which the denial is based;

(3)    a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4)    an explanation of the Plan's claim review procedure.

The claimant also shall be advised that the claimant or a duly authorized representative may request a review by the Committee of the decision denying the claim by filing with the Committee, within 60 days after such notice has been received by the claimant, a written request for such review, and that such person may review pertinent documents, and submit issues and comments in writing within the same 60-day period. If such request is so filed, such review shall be made by the

Committee within 60 days after receipt of such request, unless special circumstances require an extension of time for processing, in which case the claimant shall be so notified and a decision shall be rendered as soon as possible, but not later than 120 days after receipt of the request for review. The claimant shall be given written notice of the decision resulting from such review, which notice shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan provisions on which the decision is based.

(b)    **Claims on or After January 1, 2002.** Except as otherwise provided in subsection (c), this subsection (b) shall apply to claims for benefits under the Plan that are filed on or after January 1, 2002.

If any claim for benefits under the Plan is wholly or partially denied, the claimant shall be given notice in writing of such denial within 90 days after receipt of the claim (or within an additional 90 days if special circumstances require an extension of time, and written notice of the extension shall be furnished to the claimant). Notice of the denial shall set forth the following information:

(1)    the specific reason or reasons for the denial;

(2)    specific reference to pertinent Plan provisions on which the denial is based;

(3)    a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(4)    an explanation that a full and fair review by the Committee of the decision denying the claim may be requested by the claimant or his or her authorized representative by filing with the Committee, within 60 days after such notice has been received, a written request for such review; and

(5)    a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse decision upon review.

If the claimant files a written request for a review of a denied claim or that a domestic relations order is qualified, the claimant or his or her authorized representative may request, free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim or domestic relations order, and may submit documents, records, issues, and comments in writing within the same 60-day period specified in subsection (d) above. The review shall take into account all comments, documents, records, and other information submitted by the claimant relating to the claim or domestic relations order without regard to whether such material was submitted or considered as part of the initial determination. The decision of the Committee upon review shall be made promptly, and not later than

60 days after the Committee's receipt of the request for review, unless special circumstances require an extension of time for processing, in which case the claimant shall be notified of the extension and the date by which a decision is expected to be made, and a decision shall be rendered as soon as possible, but not later than 120 days after receipt of the request for review. If the claim is denied, wholly or in part, the claimant shall be given a copy of the decision promptly. The decision shall be in writing and shall include specific reasons for the denial; specific references to the pertinent Plan provisions on which the denial is based; a statement that the claimant may request, free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim or domestic relations order; and a statement of the claimant's right to bring a civil action under section 502(a) of ERISA. The decision shall be written in a manner calculated to be understood by the claimant.

(c)    **Disability Claims on or After January 1, 2002.** This subsection shall apply to claims for disability benefits under the Plan that are filed on or after January 1, 2002.

Any claim for disability benefits under the Plan shall initially be filed with an individual identified by the Plan Administrator (the "administrator"). If the claim is wholly or partially denied, the claimant shall be given notice in writing of the denial. This notice shall be given in writing within a reasonable period of time after receipt of the claim by the administrator. This period will not exceed 45 days after receipt of the claim, except that if the administrator determines that an extension is necessary due to matters beyond the control of the Plan, the period may be extended up to an additional 30 days. If prior to the end of the first 30-day extension period the administrator determines that, due to matters beyond the control of the Plan, the decision cannot be rendered within that extension period, the period may be extended up to an additional 30 days. Written notice of any extension shall be furnished to the claimant prior to termination of the applicable period, and it shall indicate the standards on which entitlement to a disability benefit is based, the unresolved issues that prevent a decision on the claim, the additional information needed to resolve those issues, and the date by which the benefit determination is expected. The claimant shall have at least 45 days after this notice to submit the specified information, and the period for making the benefit determination shall be tolled from the date of the extension notice to the date on which the claimant responds to the request for additional information.

Notice of any claim denial shall be written in a manner calculated to be understood by the claimant and shall set forth the following information:

(1)    the specific reasons for the denial;

(2)    a specific reference to the Plan provisions on which the denial is based;

37

(3)   a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why this material or information is necessary;

(4)   the identification of medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the denied claim, without regard to whether this advice was relied upon in making the benefit determination;

(5)   an explanation that a full and fair review by the Committee of the decision denying the claim may be requested by the claimant or an authorized representative by filing with the Committee, within 180 days after the notice has been received, a written request for review;

(6)   a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse decision upon review; and

(7)   if an internal rule, guideline, protocol, or other similar criterion was relied upon in denying the claim, a statement that such a rule, guideline, protocol, or other similar criterion was relied upon and that a copy of the rule, guideline, protocol, or the criterion will be provided free of charge to the claimant upon request.

If a claimant files a written request for review of a denied claim, the claimant or his or her authorized representative may request, free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim and may submit written comments, documents, records, and other information relevant to the claim within the 180-day period specified in paragraph (5) above. The notice of claim denial shall include a statement of the claimant's rights to review and submit information pursuant to this paragraph.

The review by the Committee shall take into account all comments, documents, records, and other information submitted by the claimant relating to the claim without regard to whether such material was submitted or considered as part of the initial determination, and it shall not afford deference to the decision denying the claim. If the claim denial was based in whole or in part on a medical judgment, the Committee shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment, who was not consulted in connection with the initial benefit determination, and who is not a subordinate of any person who was so consulted.

The decision of the Committee upon review shall be made promptly, and not later than 45 days after the Committee's receipt of the request for review. However, if the Committee determines that special circumstances require an extension of time, this period may be extended for up to an additional 45 days. Written notice of the extension shall be furnished to the claimant prior to termination of the initial 45-day

period, and it shall indicate the special circumstances requiring an extension of time and the date by which the decision on review is expected.

If the claim is denied, wholly or in part, the claimant shall be given a copy of the decision promptly. The decision shall be in writing and shall be written in a manner calculated to be understood by the claimant. The decision shall include specific reasons for the denial; specific references to the pertinent Plan provisions on which the denial is based; a statement that the claimant may request, free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim; a statement of the claimant's right to bring a civil action under section 502(a) of ERISA; and if an internal rule, guideline, protocol, or other similar criterion was relied upon in making the decision on review, a statement similar to the one described in paragraph (7) above.

## 7.10 Indemnification

The Company shall indemnify each member of the Committee and each other Employee acting at the direction of the Committee in the administration of the Plan against any and all claims, loss, damages, expenses (including counsel fees approved by the Committee), and liability (including any amounts paid in settlement with the Committee's approval) arising from any loss or damage or depreciation which may result in connection with the execution of his duties or the exercise of his discretion or from any other action or failure to act hereunder, except when the same is judicially determined to be due to the gross negligence or willful misconduct of such person.

# Article 8. Miscellaneous Provisions

## 8.1 Incompetence

Every person receiving or claiming benefits under the Plan shall be conclusively presumed to be mentally competent until the date on which the Committee receives a written notice, in a form and manner acceptable to the Committee, that such person is incompetent and that a guardian, conservator, or other person legally vested with the care of such person's person or estate has been appointed; provided, however, that if the Committee shall find that any person to whom a benefit is payable under the Plan is unable to care for his affairs because of incompetency, any payment due (unless a prior claim therefor shall have been made by a duly appointed legal representative) may be paid to the spouse, a child, a parent, a brother or sister, or to any person or institution deemed by the Committee to have incurred expense for such person otherwise entitled to payment. Any such payment so made shall be a complete discharge of liability therefor under the Plan.

In the event a guardian or conservator of the estate of any person receiving or claiming benefits under the Plan shall be appointed by a court of competent jurisdiction, distributions hereunder may be made to such guardian or conservator provided that proper proof of appointment and continuing qualification is furnished in a form and manner acceptable to the Committee. Any such payment so made shall be a complete discharge of any liability therefor under the Plan, to the extent permitted by law.

## 8.2 Nonalienation

No benefit payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment, garnishment, or encumbrance of any kind, and shall not be subject to or reached by any legal or equitable process (including execution, garnishment, attachment, pledge, or bankruptcy) in satisfaction of any debt, liability or obligation, prior to receipt. Any attempt to alienate, sell, transfer, assign, pledge, or otherwise encumber any such benefit, whether presently or thereafter payable, shall be void. The Retirement Fund shall not in any manner be liable for or subject to the debts or liabilities of any Employee, Participant, or Inactive Participant or other person entitled to receive benefits hereunder. This section 8.2 shall not preclude the enforcement of a Federal tax levy made pursuant to Code section 6331, nor the collection by the United States of a judgment resulting from an unpaid tax assessment.

Notwithstanding the foregoing provisions, the Committee shall direct the Trustee or insurer to make all payments required by a qualified domestic relations order within the meaning of Code section 414(p). The Committee shall establish reasonable procedures to determine the qualified status of domestic relations orders and to administer distributions under such orders. In no event shall a domestic relations order be treated as a qualified domestic relations order if it requires the Plan to make payments prior to the date that a Member attains his Early Retirement Age.

## 8.3 Right to Terminate Employment

The adoption and maintenance of the Plan and Trust shall not be deemed to be a contract between the Employer and any of its Employees. Nothing herein contained shall be deemed to give to any Employee the right to be retained in the employ of the Employer or to interfere with the right of the Employer to discharge any Employee at any time. nor shall it be deemed to give the Employer the right to require any Employee to remain in its employ. nor shall it interfere with the Employee's right to terminate his employment at any time.

## 8.4 Notice of Address

Each person entitled to benefits from the Trust must file with the Employer, in writing, such person's post office address and each change of post office address. Any communication, statement. or notice addressed to such a person at the latest reported post office address will be binding upon such person for all purposes of the Plan and neither the Committee nor the Company nor the Trustee shall be obliged to search for or ascertain such person's whereabouts.

## 8.5 Unclaimed Payments

If a Member or beneficiary fails to apprise the Committee of changes in his address. and the Committee is unable to communicate with the Member or beneficiary at the address last recorded by the Committee within two years after any benefit becomes due and payable from the Plan to any Member or beneficiary, the Committee may mail a notice by certified mail, return receipt requested to his last known address outlining the following action to be taken unless he makes written reply to the Committee within 60 days from the mailing of such notice: The Committee may direct that such benefit and all further benefits for such person shall be forfeited and all liability for the payment thereof shall terminate: provided. however. that in the event of the subsequent reappearance of the Member or beneficiary prior to termination of the Plan. the benefits which were due and payable and which such person missed shall be paid in a single sum without interest. and future benefits due such person shall be reinstated in full without interest. Any amounts forfeited under this section 8.5 shall be applied to reduce future Employer contributions.

## 8.6 Notices

Any notice required or permitted to be given hereunder to a Member or beneficiary will be properly given if delivered or mailed. postage prepaid. to the Member or beneficiary at the last post office address as shown on the Employer's records. Any notice to the Committee or the Company shall be properly given or filed if delivered or mailed. postage prepaid. to the Committee or the Company. as the case may be. at such address as may be specified from time to time by the Committee. Any notice required hereunder may be waived by the person entitled thereto.

## 8.7 Action by Company

Any action required or permitted to be taken hereunder by the Company or the Board of Directors shall be taken by the Board of Directors. or by any committee of the Board of Directors. or by any officer of the Company. or by any person or persons authorized by them.

## 8.8 Effect of Mistake

In the event of any mistake or misstatement with respect to the eligibility. service. or participation of a Member or beneficiary. or the amount of any benefit payment made or to be made to a Member or beneficiary. the Committee shall. to the extent it deems it appropriate. make such adjustments in future benefit payments as will in its judgment accord to such Member or beneficiary the benefits to which he is entitled under the Plan.

## 8.9 Severability

In the event any provision of the Plan shall be held invalid or illegal for any reason. any illegality or invalidity shall not affect the remaining parts of the Plan. but the Plan shall be construed and enforced as if said illegal or invalid provision had never been inserted. and the Company shall have the privilege and opportunity to correct and remedy such questions of illegality or invalidity by amendment as provided in the Plan.

## 8.10 Counterparts

This Plan has been established by the Company and may be executed in any number of counterparts. each of which shall be considered as the original. and no requirements to produce another counterpart shall exist.

## 8.11 Plan Binding on Successors

This Plan shall be binding upon all persons entitled to benefits hereunder. their respective heirs. next-of-kin and legal representatives. and upon the Employers. their successors. and assigns.

## 8.12 Applicable Law

The Plan and all rights hereunder shall be governed. construed. and administered in accordance with the laws of the State of New York and of the United States of America. and all provisions hereof shall be administered according to the laws of said state to the extent such law is not superseded pursuant to the provisions of Section 514 of the Act. The Trust and all rights thereunder shall be governed. construed. and administered in accordance with the laws of the state where the Trustee thereunder is located.

# Article 9. Amendment and Termination

## 9.1 Amendments

The Company expects the Plan to be permanent, but since conditions affecting it cannot be anticipated or foreseen, the Company must necessarily and hereby does reserve the right to modify, amend, or terminate the Plan or any Supplement thereto at any time, by action authorized by its Board of Directors. The Company may make any modifications or amendments, additions, or deletions in this Plan or a Supplement, as to benefits or otherwise, retroactively if necessary or appropriate, which it deems appropriate in order to qualify this Plan, and each separate plan thereunder, and to keep it qualified under the Act and Code section 401(a) and to have the Trust declared exempt and keep it exempt from taxation under Code section 501(a). Except to the extent necessary to comply with applicable laws and regulations, no such amendment shall operate either directly or indirectly to deprive any Member or beneficiary of a nonforfeitable beneficial interest as it is constituted at the time of amendment. Retroactive Plan amendments may not decrease, directly or indirectly, the accrued benefit of any Member determined as of the beginning of the first Plan Year to which the amendment applies, or as of the time the amendment was adopted. Amendments which reduce accrued benefits must be approved by the Secretary of Labor.

## 9.2 Provision Against Diversion

No part of the assets of the Trust shall, by reason of any modification or amendment or otherwise, be used for, or diverted to, purposes other than for the exclusive benefit of Members or their beneficiaries under the Plan and administrative expenses to the Plan prior to the satisfaction of all liabilities to such Members and their beneficiaries for distributions hereunder and such expenses, except as provided in section 6.5.

## 9.3 Distribution on Termination or Partial Termination

In the event of the termination or partial termination of the separate plan with respect to any Participating Group of any Employer, that portion of any assets then held in the Retirement Fund allocable to Members in that Participating Group affected by such complete or partial termination, as determined by the Committee, based on the separate asset account maintained in accordance with section 6.6 shall be allocated, after payment of all expenses of administration or liquidation attributable to such Participating Group, for the purposes and in the manner and order specified in section 4044(a) of the Act, to provide benefits which are "protected benefits" as defined in Code section 411(d)(6) and regulations thereunder for the affected Members and their beneficiaries. The benefit provided for any persons who are active or former "highly compensated employees" as defined in Code section 414(q)(7) shall he limited to a benefit that is nondiscriminatory under Code section 401(a)(4). If any assets remain in the separate asset account after the foregoing allocations, they may revert to the Employer as provided in section 6.5(b).

Notwithstanding the foregoing, in the event the separate plan with respect to any Participating Group terminates, or there is a spinoff of part of such a separate plan (in excess of the 3 percent of the Plan assets permitted under regulation section 1.414(1)-1(n)(2)) within five years following the date of any merger of another plan into such separate plan, and if the sum of the assets in such separate plan after any such merger was less than the sum of the present values of the accrued benefits which are "protected benefits" as defined in Code section 411(d)(6) and regulations thereunder (whether or not vested) of both such separate plan and such other plan on a termination basis on the merger date, then a special schedule of benefits shall be created from the necessary (as identified by an enrolled actuary) data maintained by the Company or the Committee and shall be inserted in and modify the allocation priorities set forth above in this section at the time of such termination or spinoff, in accordance with regulation section 1.414(1)-1(e) through (j).

The benefits to be provided by the allocations outlined above in this section 9.3 shall be fully vested and nonforfeitable as of the date of such termination or partial termination of such separate plan for distribution to the persons entitled thereto, and distribution may be implemented through the continuance of the separate asset account under the Retirement Fund for that Participating Group, or the creation of a new retirement fund for that purpose, or by purchase of nontransferable annuity contracts, or by a combination thereof.

The Committee may direct that any or all of the benefits to be provided by such allocations may be commuted on the basis of the actuarial assumptions specified in section 4.9 for lump sum payments and distributed as an immediate cash payment, subject to the consent of the Member if a cash payment exceeds $3,500 or such higher amount as may be permitted by Pension Benefit Guaranty Corporation regulations; provided, however, that the primary form of distribution for eligible married Members whose cash payment exceeds $3,500 shall be the automatic (joint and survivor) surviving spouse benefit under section 4.7 unless the Member waives such form of distribution with spousal consent.

## 9.4 Successor Employer

In the event of the dissolution, merger, consolidation, or reorganization of the Employer, provision may be made by which the Plan and Trust will be continued by the successor; and, in that event, such successor shall be substituted for the Employer under the Plan. The substitution of the successor shall constitute an assumption of Plan liabilities by the successor and the successor shall have all of the powers, duties, and responsibilities of the Employer under the Plan.

## 9.5 Transfers, Mergers, and Consolidations

The Plan (or any separate plan hereunder) may not merge or consolidate with, or transfer its assets or liabilities to, any other plan unless each Member in the Plan (or any separate plan hereunder) would (if the other plan or such separate plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit the Member would have been entitled to receive immediately before the merger, consolidation, or transfer (if the Plan or such separate plan had then terminated).

# Article 10. Participation by Affiliates

## 10.1 Participation in the Plan

Any Affiliate which desires to become an Employer may elect to become a party to the Plan and Trust by adopting the Plan for the benefit of one or more Participating Groups of its Hourly Employees, effective as of the Coverage Date specified in such adoption—

(a)    by filing with the Committee a certified copy of a resolution of its board of directors to that effect, together with such other instruments as the Committee may require; and

(b)    by the Committee's filing with the then Trustee a copy of such resolution, together with a certified copy of resolutions of the Company's Board of Directors approving such adoption.

* * * * * * * * *

**In Witness Whereof,** Carlisle Corporation has caused this amended and restated Carlisle Corporation Retirement Plan for Hourly Employees to be executed, on this 26th day of February, 2002, effective as of January 1, 1997, by its proper officers duly authorized by its Board of Directors.

Carlisle Corporation

Attest:

By _____
    Its   ASSISTANT SECRETARY

By _____
    Its   SECRETARY

45